# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

EFRAIN RODRIGUEZ,                    :

     Plaintiff,                 :

                         Case No. 3:14cv00463

vs.                                  :

                         District Judge Thomas M. Rose

CAROLYN COLVIN,                      :      Chief Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,             :

     Defendant.                 :

# REPORT AND RECOMMENDATIONS[1]

## I.      Introduction

Plaintiff Efrain Rodriguez brings this case challenging the Social Security Administration's denial of his applications for Supplemental Security Income and Disability Insurance Benefits.  He applied for benefits in May 2011, asserting that beginning on April 19, 2011, he could no longer work and was therefore under a disability due to a number of health problems, including the lingering effects of a heart attack and related surgery, diabetes, high blood pressure, and high cholesterol.  The Social Security Administration denied his applications mainly through Administrative Law Judge (ALJ) Amelia G. Lombardo's decision that he was not under a benefits-qualifying disability.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff brings this case challenging ALJ Lombardo's non-disability decision. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), the administrative record (Doc. #6), and the record as a whole.

Plaintiff seeks an Order remanding the case to the Social Security Administration for payment of benefits. The Commissioner seeks an affirmance of the ALJ's non-disability decision.

## II.    Background

### A.    Plaintiff's Vocational Profile and Testimony

Plaintiff's age on his claimed disability onset date (40 years old) placed him within the Social Security Administration's definition of a younger person. He has a limited education and worked as a spot welder, a machinist, and a machine feeder.

During a hearing before ALJ Lombardo, Plaintiff testified that he had a heart attack while at work in 2011 and was taken by ambulance to the emergency room. Medical records reveal that surgeons placed 2 stents in his right-coronary artery while performing a left-heart catheterization, left-ventricular angiogram, and coronary angiogram. (Doc. #6, *PageID#* 451-52). Plaintiff testified that he still feels sharp pain in his chest every once in a while – "[i]t comes and goes." *Id*. at 94, 98. By the time of the ALJ's hearing (in July 2013), Plaintiff had not been hospitalized except when he had the heart attack.

Plaintiff explained that he cannot do the things at work he had previously been able to

2

do, like lifting. He estimated that he can lift no more than 10 pounds at a time. He has difficulty sitting still or concentrating. He testified, "Any feeling that I have on my chest or anywhere, I'll freak out." *Id*. at 96. He gets dizzy sometimes when he stands up fast. He helps his daughter with her homework but sometimes gets distracted at times – "thinking of something else." *Id*. at 103.

Plaintiff has experienced depression ever since having a heart attack. He worries regularly about having another heart attack. *Id*. at 100. He also has intrusive thoughts as well as nightmares about having another heart attack. He does not feel like his cardiac symptoms are under control because he still has chest pain. He has tried to quit smoking without success. In December 2011, Plaintiff began mental-heath treatment upon a referral from his doctor. At the time of the ALJ's hearing, he had been seeing his psychologist for a year and half. *Id*. at 101.

### B. Medical Records And Opinions

On May 8, 2013, Plaintiff's treating psychiatrist Dr. Solhein completed a questionnaire concerning Plaintiff's mental health. Dr. Solhein reported that she had seen Plaintiff weekly in 47 sessions. (Doc. #6, *PageID* at 713). She diagnosed Plaintiff with major depressive disorder, moderate, single episode, and PTSD. His signs and symptoms included sleep disturbance, mood disturbance, loss of interests, feelings of guilt and worthlessness, problems with thinking or concentrating, social withdrawal, decreased energy, intrusive memories of a traumatic experience, hostility, and irritability. *Id*. Dr,

3

Solhein believed that Plaintiff was "unable to cope with life stressors due to his current mental state.  This can be seen by recurrent decompensations w/ dysphoric (sad) mood, increased anxiety, and difficulty maintaining his typical life activities." *Id* at 714.  Although he had improved since he had started treatment with Dr. Solhein, he continued "to struggle with intrusive thoughts, anxiety, and depressed mood." *Id*.  He was "very motivated" to continue treatment and would "likely continue to improve, but this will require a long term commitment to the treatment plan." *Id*.  Dr. Solhein further reported:

> Pain or illness triggers thoughts of the heart attack, which lead[] to anxiety, depressed mood, & increased thoughts of the traumatic event.  It also symbolizes feelings of being weak and worthless, which lead[] to worsening of depression.

*Id*.  His symptoms would cause him to miss work about twice a month, on average.  *Id*. at 715.  During an 8-hour workday, he would be distracted by his psychological symptoms one-half the time.   Dr. Solhein opined that Plaintiff had no restriction with his activities of daily living; moderate restriction in social functioning; slight restriction in concentration, persistence, or pace; and moderate episodes of deterioration or decompensation in work, referring to work, Dr. Solhein noted, as "attending to his family." *Id*.

Treatment notes state that on May 31, 2012, Plaintiff reported his fear associated with heart attack, and he acknowledged that he is "scared to return to work." *Id*. at 769.  Treatment notes over the course of Plaintiff's mental-health care describe his appearance and affect, at various times, as disheveled and angry; dysphoric, slightly dysphoric, or euthymic; and discouraged with a constricted affect. *Id*. at 737-38, 740, 743, 753, 757, 774,

4

782, 784, 788-89, 91-792.  On March 12, 2013, he was "very angry with himself for becoming anxious and walking away from a job application...."  *Id*. at 740.

Before Dr. Solhein provided her opinions, psychologist Dr. Jones evaluated Plaintiff at the request of the Ohio Bureau of Disability Determination.  Dr. Jones evaluated Plaintiff on April 30, 2012.  *Id*. at 628-34.  She summarized Plaintiff's interview as follows:

> [Plaintiff] presents as an individual who is experiencing symptoms consonant with a diagnosis of Psychological Factors Affective Physical Condition, Generalized Anxiety Disorder, and Depressive Disorder ....  He indicates that he was a very active individual and very much involved in his own employment until he had a heart attack in 2011.  Since this heart attack, his doctors have encouraged him not to work.  He describes a relatively consistent work history, and he notes that much of his self-esteem has taken quite a blow because his wife is now the primary breadwinner....  He describes easy anxiety, crying episodes, and easy irritability.  He notes that he has to force himself to do most things on a daily basis....  He describes his primary stressors as medical, financial, and psychological in nature.

*Id*. at 633.  Dr. Jones opined, in part:

- "[Plaintiff] is informally assessed as functioning in the borderline range.  It is expected he should be able to understand, remember, and following instructions in a work setting commensurate with that intellectual level."

- "There does appear to be at least some impairment in his ability to maintain attention and concentration and to maintain persistence and pace to perform tasks."

- Regarding his ability to respond appropriately to supervision and to coworkers in a work setting, "[t]here does appear to be at least some subject sense of impairment in this area."

- And, "because of his increasing preoccupation with his heart condition and tendency to be easily panicked when he feels the slightest chest pain, there appears to be at least some impairment in his ability to cope

with common workplace pressures."

*Id*. at 633-34.

On May 8, 2012, psychologist Dr. Rivera reviewed the record at the request of the Ohio Bureau of Disability Determinations.  She concluded that Plaintiff had a mild restriction in his activities of daily living and social functioning and moderate restriction in maintaining concentration, persistence, or pace.  *Id*. at 143.  He had mild difficulty in social functioning and no episodes of recent decompensation.  *Id*.  Dr. Rivera further opined that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions, and moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and moderately limited in his ability to perform at a consistent pace without an unreasonable number and length of rest periods.  *Id*. at 147.  He was moderately limited in other areas of function – *i.e.*, interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and responding appropriately to changes in the work setting.  *Id*. at 148.  In the last area, Dr. Rivera explained that Plaintiff "can perform a job where changes can be introduced gradually, and can be explained [to him]. There should be direction from the job as to what is expected of them."  *Id*.  Plaintiff could perform, according to Dr. Rivera, simple 1-to-2 step instructions in a work environment without frequent interruptions, without the prioritizing of tasks, with only superficial

interactions with others, and with job expectations provided.  *Id*. at 147-49.

Further description of the evidence is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have discussed the relevant records concerning Plaintiff's impairments with citations to specific evidence.  The Commissioner adopts and incorporates the ALJ's discussion of the medical evidence.

### III.    "Disability" Defined and <br> ALJ Lombardo's Decision

To be eligible for Disability Insurance Benefits or Supplemental Security Income a claimant must be under a "disability" as the term is defined by the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both benefit programs.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70.

As noted previously, it fell to ALJ Lombardo to evaluate the evidence connected to Plaintiff's benefit applications.  She did so by considering each of the 5 sequential steps set

forth in the Social Security regulations.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2]

Although she reached significant conclusions at each sequential step, her more pertinent

findings for present purposes occurred at Steps 2, 3, and 4.

At step 2, ALJ Lombardo found that Plaintiff has the severe impairments of "the

residual effects of a myocardial infarction and stent placements, mild chronic obstructive

pulmonary disease (COPD), depression, and anxiety."  (Doc. #6, *PageID*# 72).  At step 3,

the ALJ concluded that Plaintiff does not have one or more impairments that satisfy the

criteria needed to establish a disability under the Listings.[3]

At step 4, the ALJ assessed Plaintiff's residual functional capacity or the most he

could do in the workplace despite his impairments.  *See* 20 C.F.R. §404.1545(a); *see also*

*Howard v. Commissioner of Social Sec*., 276 F.3d 235, 239 (6th Cir. 2002).  The ALJ that

Plaintiff could perform light work[4] except he "is limited to unskilled work..., he cannot work

at unprotected heights, he cannot be subject to assembly line production quotas, he cannot

perform fast-paced work, and he is restricted to occasional contact with the general public,

supervisors, and coworkers."  (Doc. #6, *PageID*# 74).

---

[2] The remaining citations to the regulations will identify the pertinent Disability Insurance Benefits regulations with full knowledge of the corresponding Supplemental Security Income regulations.

[3] The Commissioner's Listing of Impairments is found at 20 C.F.R. Part 404, Subpart P, Appendix 1.

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...."  20 C.F.R. §404.1567(b).

These findings led the ALJ to determine at step 5 that Plaintiff could perform a significant number of jobs that exist in the national economy.  This, in the end, led to the ALJ's ultimate conclusion (previously noted) that Plaintiff was not under a benefits-qualifying disability.

## IV.    <u>Judicial Review</u>

The Social Security Administration's denial of Plaintiff's applications for benefits – here, embodied in ALJ Poulose's decision – is subject to judicial review along two lines: whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's findings.  *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see Bowen v. Comm'r of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746.

The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings.  *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Social. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, substantial evidence supports the ALJ's factual findings when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th

Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

**V.**   **Discussion**

Plaintiff contends that the ALJ failed to weigh the opinions of the medical sources – namely, the opinions of Dr. Solhein, Dr. Jones, and Dr. Rivera – under the factors required by Social Security regulations and Sixth Circuit caselaw.[5]  The Commissioner argues that the ALJ properly declined to give Dr. Solhein's opinions controlling weight because her opinions were not well supported, were inconsistent with other substantial evidence, and were internally inconsistent on certain points.  The Commissioner further maintains that the ALJ set forth "good reasons" for the weight given to Dr. Solhein's opinions, as the Social Security regulations require.

Social Security regulations recognize several different types of medical sources: treating physicians and psychologists, nontreating yet examining physicians and psychologists, and nontreating/record-reviewing physicians and psychologists.  *Gayheart v. Comm'r Social Sec*., 710 F.3d 365, 375 (6th Cir. 2013).

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"). In other words, "[t]he regulations provide progressively more rigorous tests for

---

[5] Plaintiff does not challenge the ALJ's assessment of his physical residual functional capacity.

> weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

*Gayheart*, 710 F.3d at 375 (citations omitted).[6] To effect this hierarchy, the Regulations adopt the treating physician rule. The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with other substantial evidence in [a claimant's] case record."

*Gayheart*, 710 F.3d at 376 (citation omitted); *see Gentry v. Comm'r Social Sec*, 741 F.3d 708, 723 (6th Cir. 2014). If both conditions do not exist, the ALJ's review must continue:

> When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors.

*Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the

---

[6] The Social Security Administration has re-lettered 20 C.F.R. §404.1527 without altering the treating physician rule or other legal standards  The re-lettered version applies to ALJ decisions issued on or after April 1, 2012.

11

ALJ for the weight, if any, placed on a treating medical source's opinions. *Id*.

In the present case, ALJ Lombardo placed "little weight" on Dr. Solhein's opinion that Plaintiff would miss work twice a week and would be distracted by his psychological symptoms of at least one-half the time during an 8-hour workday. (Doc. # 6, *PageID# 77*).

The ALJ reasoned:

> Dr. Solhein does not explain why the claimant would miss work or be distracted to that degree. In terms of the "paragraph B" criteria, she even indicated that the claimant's mental impairments would cause only slight deficiencies in concentration, persistence, or pace, no restrictions in his activities of daily living, and no greater than moderate difficulties in maintaining social functioning. Furthermore, at the time she prepared the assessment of the claimant's mental residual functional capacity in May 2013, she indicated that [Plaintiff] had a current Global Assessment of Functioning of 61 to 70 is indicative of only slight symptomology or slight difficulties in functioning and describes an individual who is generally doing pretty well.
>
> Dr. Solhein stated in her assessment that [Plaintiff] was unable to cope with life stressors as illustrated by recurrent decompensations with sad mood, increased anxiety, and difficulty maintaining typical life activities. However, she said that [Plaintiff] was not [sic[7]] motivated to continue his therapy and psychotropic medications and that he had improved since beginning his treatment and would continue to improve with treatment. Dr. Solhein's description of [Plaintiff's] success with therapy and his level of functioning is incompatible with disabling mental illness. Her psychiatric progress notes at the time indicated that [Plaintiff] was doing well, controlling his anxiety, and handling stressors appropriately.

*Id*. at 77-78 (citation omitted) (footnote added).

The Commissioner emphasizes that the Court, in its present review, does not reweigh

---

[7] Dr. Solhein reported that Plaintiff "is very motivated to continue treatment ...." (Doc. #6, *PageID at 714).*

the evidence or make independent factual findings.  The ALJ, instead, has the duty to weigh the evidence, resolve material conflicts, and make independent findings of fact.  The Commissioner is right.  Rather than requiring the Court to reweigh the evidence, the applicable standard of review for this Court, as noted above, considers (1) whether the ALJ applied the correct legal standards, and (2) whether substantial evidence supports the ALJ's decision.  *Blakley*, 581 F.3d at 405-06.  In this case, the ALJ's decision stumbles on both questions.

ALJ Lombardo's decision did not apply the correct legal standards to Dr. Solhein's opinion.  Although the ALJ applied the "consistency" factor as permitted by the regulations, the ALJ's reasoning jumps straight to the consistency factor without mention of the treating physician rule or applying the legal criteria to determine if controlling weight was due Dr. Solhein's opinions.  This permitted the ALJ to weigh Dr. Solhein's opinions under the same legal criteria applicable to any acceptable medical source's opinions without considering whether it was due controlling weight under the treating physician rule.  The remaining regulatory factors – supportability, consistence, specialization, etc. – do play a role in the evaluation of a treating medical source's opinions but the role these factors play kicks in after a finding that a treating medical source's opinion is not due control weight under §404.1527(c)(2).  *See Rogers*, 486 F.3d at 242.  The ALJ's limited focus effectively placed the opinions of a long-term treating specialist on legal footing equal to that of non-treating medical sources.  This conflicts with the regulations, which "provide progressively more

13

rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." *Gayheart*, 710 F.3d at 375 (citations omitted).

The ALJ's omission, moreover, neglects relevant evidence regarding the long-term and frequent treatment relationship that existed between Plaintiff and Dr. Solhein.  When Dr. Solhein provided her opinions, she reported that she saw Plaintiff weekly and had seen him in 47 treatment sessions.  (Doc. #6, *PageID*# 713).  This is highly probative of whether her opinions are due controlling weight under the treating physician rule.  "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *See Rogers*, 486 F.3d at 242.  It was therefore error for the ALJ to overlook or ignore the length and frequency of Plaintiff's treatment with Dr. Solhein.  *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."); *cf. Brooks v. Comm'r of Soc. Sec.*, 531 Fed. App'x 636 641 (6th Cir. Aug. 6, 2013) ("a substantiality of evidence evaluation does not permit a selective reading of the record. 'Substantial evidence is not simply some evidence, or even a great deal of evidence.  Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)).

14

Next, the ALJ's reasons for placing little weight on Dr. Solhein's opinions are unsupported by substantial evidence. The ALJ concluded that Dr. Solhein does not explain why she believed, in the ALJ's words, that Plaintiff "would miss work about twice per month due to his mental impairments and that he would be distracted by this psychological symptoms at least one half of the time during an 8 hour workday." (Doc, #6, *PageID*# 77). A review of Dr. Solhein's report does not bear this out.  Dr. Solhein explained that Plaintiff could not cope with life stressors, which doubtlessly included work stress, "due to his current mental state...."[8] *Id*. at 714.  Dr. Solhein continued, "This can be seen by recurrent decompensation with dysphoric (sad) mood, increased anxiety, and difficulty maintaining his typical life activities." *Id*.  Plaintiff was, Dr. Solhein reported, still struggling with "intrusive thoughts anxiety, and depressed mood." *Id*.  Perhaps the ALJ overlooked these comments because Dr. Solhein's opinion about Plaintiff's anticipated monthly work absences appears on the next page of the questionnaire she completed.  Yet, the page difference is insignificant when the substance of Dr. Solhein's clinical findings and other comments relate directly to, and support, her opinion about the number and frequency of Plaintiffs' anticipated absences from work.  *See id*. at 714-15.

---

[8] Social Security Ruling 85-15 recognizes, "it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings. Determining whether these individuals will be able to adapt to the demands or 'stress' of the workplace is often extremely difficult.... The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day....  [T]he mentally impaired may have difficulty meeting the requirement of even so-called 'low stress' jobs."

The ALJ also concluded that great weight should be placed on the opinions provided record-reviewing psychologist Dr. Rivera and 1-time examining psychologist Dr. Jones "because the findings show that [Plaintiff] remains capable of performing simple tasks in a low stress work setting at jobs that involve limited social contact."  (Doc. #6, *PageID*# 78). What findings is the ALJ referring to?  Without further explanation, the ALJ's reference is too vague to reasonably identify the particular "findings" she refers to.  This falls short of the applicable regulation.  "Unless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical . . . consultant[.]"  20 C.F.R. § 404.1527(e)(2)(ii).  Maybe the ALJ is referring to her own findings about Plaintiff's mental residual functional capacity.  If so, the ALJ is essentially saying, "The opinions of these doctors are due great weight because their opinions agree with my findings about Plaintiff's mental work limitations."  This, however, would be the reverse of the analysis the regulations require.  The correct sequential analysis at step 4 requires the ALJ to ground his or her assessment of residual functional capacity on medical source opinions, not the reverse.  20 C.F.R. §404.1545(a)(3).  The medical opinions must be weighed before, and as an essential part of, an ALJ's assessment of residual functional capacity.  It was error to the extent the ALJ did the reverse.  The ALJ also neglected to review the opinions of Drs. Rivera and Jones under the applicable regulatory factors.  *See* Doc. #6, *PageID*# 77-78.  In contrast, the ALJ provided comparatively more scrutiny to Dr. Solhein's opinions.  This is error.  *Gayheart,* 710 F.3d at 374.

16

Plaintiff contends that the ALJ erred by referring to his Global Assessment

Functioning (GAF) scores.  The ALJ's reference to Plaintiff's GAF scores is dubious at best.

*See DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) (quoting, in part,

*Wind v. Barnhart*, No. 04–16371, 2005 WL 1317040, at *6 n.5, 133 Fed. App'x 684 (11th

Cir. June 2, 2005) (quoting, in part, 65 Fed. Reg. 50746, 50764 (Aug. 21, 2000)); *cf.* DSM-5

and The Assessment of Functioning: The World Health Organization Disability Assessment

Schedule 2.0, J. Am Acad. Psychiatry and Law, 42: 2: 173-181 (June 2014) (available at

http://www.jaapl.org) ("[T]he Global Assessment of Functioning Scale (GAF), the

previously endorsed numerical rating scale used for assessment of functioning..., has been

eliminated" from DSM-V).  This is particularly so when the ALJ's use of GAF assessments

as a reasons for discounting Dr. Solhein's opinion fails to realize that work stress, if Plaintiff

returns to work, would likely reduce his ratings on the GAF scale.  The major stressor of

work was not fully in play for Plaintiff when Dr. Solhein provided her opinions because

Plaintiff was not employed at that time.  Given this, Dr. Solhein's opinion about Plaintiff's

work limitations cannot be reasonably considered internally inconsistent.  Plaintiff,

moreover, was showing signs of improvement since his treatment had begun, when Dr.

Solhein reported in May 2013, *id.* at 714.  Dr. Solhein's report, moreover, that Plaintiff was

improving during treatment is consistent with Dr. Solhein's assessment of Plaintiff's GAF in

May 2013 and does not negate the specific explanations Dr. Solhein provided in her report or

the signs and symptoms she identified.  *Id.* at 713-14.

Turning to Dr. Jones' report, at least some of the signs and symptoms she observed during her one-time examination of Plaintiff tend to support Dr. Solhein's opinion that Plaintiff would miss about 2 days a month and would have significant limitations in his concentration, persistence, and pace. Dr. Jones observed that Plaintiff's demeanor was resigned and dysphoric and his affect was sad. He felt bad about not working. *Id*. at 630. He had limited eye contact. He was preoccupied with his symptomatology, and he displayed some confusion. He apparently had unresolved guilt for signing papers to turn off his mother's life support. This unresolved guilt was characterized as a preoccupation for him "and also evidences a degree of confusion." *Id*. at 631. Dr. Jones described Plaintiff as "distracted with regard to his degree of consciousness." *Id*. Dr. Jones also found that he also had "at least some impairment..." in his ability to deal with work stress because of his preoccupation with his heart condition. *Id*. at 634. These findings by Dr. Jones tend to support Dr. Solhein's opinions.

Accordingly, Plaintiff's Statement of Errors is well taken.

## VI.    Remand is Warranted

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F3d at 746. Remand is warranted for an ALJ's failure to follow the regulations, for example, when the ALJ failed to provide "good reasons" for rejecting a

treating medical source's opinions, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-47 (6th Cir. 2004); failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff to lack credibility, *Rogers*, 486 F.3d at 249.

Under sentence 4 of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence 4 may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041. The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence 4 of §405(g) due to problems set forth above. On remand the ALJ should be directed to review Plaintiff's disability claim and evidence to determine anew whether he was under a benefits-qualifying disability. The ALJ's review on remand should, at a

19

minimum, involve a re-assessment Plaintiff's mental residual functional capacity, and a re-consideration of the evidence at steps 3, 4, and 5 of the sequential evaluation.

## IT IS THEREFORE RECOMMENDED THAT:

1.  The Commissioner's non-disability finding be vacated;

2.  No finding be made as to whether Plaintiff Efrain Rodriguez was under a "disability" within the meaning of the Social Security Act;

3.  This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report and a Decision and Entry adopting this Report; and

4.  The case be terminated on the docket of this Court.

November 19, 2015

                s/Sharon L. Ovington
                Sharon L. Ovington
          Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).